[649 NYS2d 232]

WILLIAM STATA, Individually and as Administrator of the Estate of KELLY STATA, Deceased, Respondent, v VILLAGE OF WATERFORD et al., Appellants, et al., Defendants.

Third Department, November 7, 1996

APPEARANCES OF COUNSEL

*Randall J. Ezick,* Schenectady, for appellants.

*Seymour Fox, P. C.,* Troy *(Bonnie P. Chavin* of counsel), for respondent.

### OPINION OF THE COURT

SPAIN, J.

This action arises out of a fire which occurred during the early morning hours of May 3, 1990 at the Waterford Inn in the Town of Waterford, Saratoga County. Plaintiff and his wife, the decedent herein, were tenants of a second-floor single room efficiency apartment on the east side of the Inn, also known as room No. 6. Defendants Village of Waterford and the Waterford Village Fire District (hereinafter collectively referred to as defendants) provided fire protection for that portion of the Town of Waterford and, on the morning in question, responded to the fire.

Decedent woke plaintiff between 3:00 A.M. and 3:30 A.M. and told him that there was a fire. Plaintiff looked out the window and saw flames on the wooden railing and walkway in front of the door to their room and determined that the only way to get out was to run through the flames on the walkway and around the corner to the metal stairs leading to ground level. Plaintiff directed decedent to wet down her clothing in the shower and follow him; he opened the door and led the way through the flames to the nearby corner of the second floor walkway which had not yet started to burn. At that point he discovered that decedent had not followed him. He tried two or three times to run back through the flames to rescue her but only got half

way to their room before the flames burned him and forced him to retreat. He then ran along the second floor walkway around to the east side or opposite side of the Inn, which was not on fire; there he found a small fire extinguisher and returned to the fire where he tried unsuccessfully to extinguish the flames.

Plaintiff then returned to the opposite side of the Inn where he attempted to break through the wall of room No. 2 which was immediately opposite to and which shared a common rear wall with room No. 6. There he could hear decedent screaming from the other side of the wall. Plaintiff began to strike the sheetrock wall in room No. 2 with the fire extinguisher, but was only able to make a small hole in the wall because the fire extinguisher proved to be too blunt to fully penetrate; meanwhile, decedent was still screaming. Plaintiff left room No. 2 in search of a more effective object with which to break open the wall when he noticed defendants' firefighters arriving with a fire truck. As they began to prepare to fight the fire, plaintiff began yelling to them to rescue his wife through the wall in Room No. 2.

Plaintiff testified at his deposition that the firefighters did not respond to his pleas and continued their preparations and that he ran down the stairs to them, pleading with them to go through room No. 2 to get his wife out. Plaintiff further testified that while decedent was still screaming and while the fire had not spread to room No. 2, he tried to go across the road to an automobile repair shop, intending to get a sharp tool or instrument, return to room No. 2 and cut through the wall himself to rescue decedent. It was at that point that the firefighters, at the direction of their chief, chased him, grabbed him and stopped him from going across the road and from returning to the blazing building. They began treating his burns and placed him in an ambulance where they strapped him in and took him to a nearby hospital.

An eyewitness asserts in an affidavit that at that point he went up to room No. 2 where he could hear decedent screaming behind the wall; that he ran out to the firefighters and also pleaded with them, unsuccessfully, to go directly to room No. 2 and break the wall down. Plaintiff, supported by the affidavit of the same eyewitness, asserts that 15 minutes passed after he was restrained before the fire spread to the west side of the

Inn where room No. 2 was located.[1] Although firefighters eventually began an attempt to break through the common wall in room No. 2, they withdrew when directed by their superior because the fire had spread to the roof above them.

Decedent perished; her body was later found on the ground floor of the Inn after the floor to room No. 6 had collapsed. Plaintiff received serious burns. Plaintiff thereafter commenced this action to recover damages for decedent's personal injuries and wrongful death as well as for his own personal injuries. The complaint alleges that defendants were negligent in their handling of the fire and rescue attempts and in affirmatively hampering and restraining plaintiff's efforts to rescue decedent. Defendants moved for summary judgment. Supreme Court found that because the evidence proffered suggested that defendants' firefighters forcefully restrained plaintiff from rescuing decedent, defendants had performed an affirmative act which gave rise to a duty to decedent. Finding that such a duty existed with respect to decedent, Supreme Court denied the motion.[2] Defendants now appeal.

It is well settled that a municipality may not be held liable for injuries resulting from its failure to provide adequate police or fire protection absent a special relationship existing between the municipality and the injured party (*see, Kircher v City of Jamestown*, 74 NY2d 251, 255-256; *Cuffy v City of New York*, 69 NY2d 255, 260; *De Long v County of Erie*, 60 NY2d 296, 304). The refusal to impose liability in the absence of a special relationship derives from the basic principle that a municipality's duty to provide police or fire protection ordinarily is one owed to the general public and not to any specific person or class (*see, Kircher v City of Jamestown, supra*, at 256; *Cuffy v City of New York, supra*, at 260). Moreover, because a municipality's provision of police and fire protection to its citizens has been regarded as a resource-allocating function, the decision as to how to best allocate limited community resources to provide such services is properly left to the discretion of policy makers (*see, Kircher v City of Jamestown, supra*, at 256; *Cuffy v City of New York, supra*, at 260; *Weiner v Metropolitan Transp. Auth.*, 55 NY2d 175, 182).

---

1. Plaintiff's expert, William Weaver, asserts in an affidavit in opposition to defendants' summary judgment motion that the firefighters at this fire should have been able to successfully break open the wall and effect a rescue in less than five minutes from the time of their arrival.

2. Supreme Court made no mention of any duty owed by defendants to plaintiff but effectively denied defendants' motion to dismiss plaintiff's personal injury cause of action.

However, where a municipality voluntarily undertakes to act on behalf of a specific citizen, who relies on a promise of protection offered by the municipality to his or her detriment, liability will attach because the municipality will have created a special relationship with the citizen seeking protection (*see, Kircher v City of Jamestown, supra*, at 256). The elements necessary to establish such a special relationship are as follows: "(1) an assumption by the municipality, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the municipality's agents that inaction could lead to harm; (3) some form of direct contact between the municipality's agents and the injured party; and (4) that party's justifiable reliance on the municipality's affirmative undertaking" (*Cuffy v City of New York, supra*, at 260).

Construing the facts in a light most favorable to plaintiff, the nonmoving party, as we must on this motion for summary judgment (*see, Coldwell Banker Residential Real Estate v Berner*, 202 AD2d 949, 950; *Russell v Hepburn Hosp.*, 154 AD2d 796, 797), it is our view that all four elements necessary to find a special relationship have been satisfied in this case. Notably, throughout the fire, decedent was isolated and trapped inside the burning room. She never made direct contact with the firefighters. The issue on this appeal, therefore, is whether evidence of plaintiff's contact with the firefighters on decedent's behalf satisfied the elements of a special relationship sufficient to survive defendants' motion for summary judgment.

As to the first element, there appears to be contrary inferences which may reasonably be drawn concerning the assumption of a duty to act which present a triable issue of fact. It is noted that there is no evidence that the firefighters made any oral assurances of any kind to plaintiff that they would undertake the rescue of decedent. On the other hand, although oral assurances were lacking, it is nevertheless reasonable to infer that defendants assumed an affirmative duty to act on decedent's behalf by their actions when they forcefully restrained plaintiff and prevented him from any further attempts to rescue her. As to the second element, the firefighters were aware that decedent was trapped in room No. 6 and, under the circumstances, it can be reasonably inferred that defendants knew that any inaction on their part could lead to serious harm to decedent.

As to the third element, in order to form a special relationship, there must exist "some form of direct contact between

the municipality's agents and the injured party" (*Cuffy v City of New York, supra*, at 260). This direct contact element has not always been rigidly applied (*see, supra* [direct contact element satisfied when a father initiated contact with police to protect him and his immediate family from threats of a tenant]; *Sorichetti v City of New York*, 65 NY2d 461 [direct contact element satisfied when a mother initiated contact with police to protect her child]). The Court of Appeals explained that its deviation from the "direct contact" requirement in *Sorichetti v City of New York (supra)* was based upon "the close relationship between the interests of the mother and those of the child, as well as * * * the fact that the mother's contact with the police had been initiated solely for the purpose of obtaining protection for the child, who was herself helpless" (*Cuffy v City of New York, supra*, at 261-262). As *Cuffy v City of New York (supra,* at 262) further held, "proper application of the 'direct contact' requirement depends on the peculiar circumstances of each case". Here, plaintiff's version of the facts establishes that he made direct contact with and communicated the urgency of decedent's situation to the firefighters as well as the need for their immediate assistance, which they allegedly failed to provide. A reasonable inference therefore can be made that this contact was made in decedent's interest and on her behalf for the sole purpose of assuring her protection and effecting her rescue, especially since she was totally helpless (*see, Sorichetti v City of New York, supra; Freidfertig Bldrs. v Spano Plumbing & Heating*, 173 AD2d 454).

The fourth element of the special relationship test requires a party's justifiable reliance on the municipality's undertaking. " '[T]he injured party's reliance is as critical in establishing the existence of a "special relationship" as is the municipality's voluntary affirmative undertaking of a duty to act' because it is that element that 'provides the essential causative link between the "special duty" assumed by the municipality and the alleged injury' " (*Kircher v City of Jamestown*, 74 NY2d 251, 258, *supra*, quoting *Cuffy v City of New York, supra*, at 261; *see, Bogart v Town of New Paltz*, 145 AD2d 110, *lv denied* 74 NY2d 608; *Yearwood v Town of Brighton*, 101 AD2d 498, *affd* 64 NY2d 667). In our view, the rationale of *Sorichetti* applies to the "peculiar circumstances" (*Cuffy v City of New York, supra,* at 262) in this case in that decedent relied on the firefighters through their dealings with her husband. Decedent knew plaintiff was trying to rescue her with or without the help of the firefighters. She was helpless and forced to rely on others

for her rescue. The only manner by which she could make her plight known to the firefighters was through plaintiff who was rendered helpless by the affirmative acts of the firefighters. Plaintiff's reliance, and reasonable expectation of the firefighters' intervention, was also decedent's reliance (*cf.*, *Helman v County of Warren*, 111 AD2d 560, 561-562, *affd* 67 NY2d 799).

In light of the extraordinary circumstances of this case, including the undisputed fact that the firefighters affirmatively prevented plaintiff from returning to the Inn to effect the rescue of decedent and plaintiff's disputed assertion that the firefighters delayed upwards of 15 minutes before attempting to break down the wall in room No. 2, we conclude that plaintiff's reliance on the firefighters' implied assurances that they would rescue decedent was justified. We conclude that, not unlike the mother in *Sorichetti v City of New York* (65 NY2d 461, *supra*), plaintiff has alleged facts sufficient to satisfy his burden of establishing decedent's justifiable reliance. Accordingly, summary judgment was properly denied with respect to the claims of negligence occurring at the scene of the fire made on behalf of decedent.

We further conclude that plaintiff's cause of action seeking recovery for his personal injuries should be dismissed. His severe burns were the result of his own efforts to rescue his wife. The record before this Court clearly shows that the special relationship required to withstand summary judgment in decedent's case does not exist with respect to plaintiff and the personal injuries he sustained (*see*, *Cuffy v City of New York, supra*; *Harland Enters. v Commander Oil Corp.*, 64 NY2d 708).

CARDONA, P. J., MIKOLL, CREW III and YESAWICH JR., JJ., concur.

Ordered that the order is modified, on the law, with costs to plaintiff, by reversing so much thereof as denied that portion of the motion by defendants Village of Waterford and Waterford Village Fire District seeking dismissal of plaintiff's cause of action for his own personal injuries; motion granted to that extent and said cause of action dismissed; and, as so modified, affirmed.